No. 09-1351, *United States v. Orr*

**HOLLOWAY**, Circuit Judge, concurring and dissenting:

I disagree with the majority's analysis and conclusion as to the first issue appealed: Whether Mr. Marshall and his colleagues were improperly allowed to testify as expert witnesses despite the government's failure to qualify them as such pursuant to Federal Rule of Evidence 702. Contrary to the majority, I would hold that the government was erroneously allowed to offer expert testimony from these witnesses in the absence of any Rule 702 findings. The trial judge's efforts to limit the testimony to proper purposes were unavailing because the remaining testimony was not relevant to any issues being tried.

Although I am in agreement with the majority's discussion of the other four issues appealed, I am convinced that the trial court's error on the first issue was not harmless as to some of the counts upon which Mr. Orr was convicted, and so would reverse the judgment entered against Mr. Orr and remand for a new trial on the affected counts.[1] Accordingly, I respectfully dissent.

\* \* \*

I

*The scope of Rule 702.*

I begin by addressing a fundamental error by the trial court — allowing non-experts including Mr. Marshall and others to testify as to contested facts on the basis of the witnesses' specialized knowledge. This error is compounded by the majority, and is

---

[1] In light of the majority's disposition, which affirms the judgment entered against Mr. Orr in its entirety, I make no attempt to determine precisely which counts of conviction were affected by the error violating Rule 702.

exemplified by the trial judge's statement that "[a] technical explanation is not an opinion, and technical explanations and information does [sic] not fall under the provisions of Rule 702 . . . ." R., Vol. VII, at 400. This analysis is plainly belied by the text of Rule 702, which on its face covers "scientific, technical, or other specialized knowledge . . . in the form of an opinion *or otherwise* . . . ." Fed. R. Evid. 702 (emphasis added). The commentary to Rule 702 further enlightens us on this point: "Most of the literature assumes that experts testify only in the form of opinions. *The assumption is logically unfounded*." Fed. R. Evid. 702, advisory committee's note (emphasis added).[2] The district court's interpretation of Rule 702 completely does away with the phrase "or otherwise."

In relying on this erroneous distinction between expert *opinion* testimony and expert *fact* testimony, the trial judge allowed Mr. Marshall[3] (whom the government made no effort to qualify as an expert under Rule 702) to describe in detail how he ran tests on Mr. Orr's fuel. For example, Mr. Marshall defined the term "base fuel" as it is used in his

---

[2] Rule 702 was amended in 2000 to better conform to the standards imposed by Supreme Court's rulings in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), but since the Rule's inception in 1975, it has *always* covered expert testimony that comes in the form of an opinion *or otherwise*.

[3] I follow the majority's convention of exclusively discussing the testimony of Mr. Marshall, even though Mr. Orr technically challenges the admission of testimony from a number of Mr. Marshall's colleagues as well.

supposed field of expertise[4], and went on to talk about how a "dynamometer" — a measuring apparatus used by experts who conduct tests like the one performed by Mr. Marshall — works. R., Vol. VII, at 401-02, 411.

The majority opinion asserts that the trial judge "walked a careful line between allowing [the non-expert] witnesses to testify based on first-hand knowledge and disallowing opinions based on their expertise." Maj. op. at 20. I agree that this is an accurate description of what the trial judge tried to do. But it is *not* the line drawn by Rule 702. Instead, Rule 702 covers *all* testimony based on "scientific, technical, or other specialized knowledge." The commentary to the rule makes this abundantly clear by noting that only *experts* "may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." Fed. R. Evid. 702, advisory committee's note. Mr. Marshall was allowed to present a scientific discourse about fuel testing. This is *exactly* the kind of testimony that non-experts are forbidden from giving. In my view, allowing this testimony, which plainly implicated "scientific, technical, or other specialized knowledge," ran afoul of Rule 702.

---

[4] Of course, for purposes of this trial, Mr. Marshall had *no* field of expertise, because the government deliberately chose to refrain from making any effort to establish his expert qualifications.

## II

*The admission of embedded expert testimony.*

I am also unable to agree with the trial court's conclusion — and the majority's acceptance thereof — that Rule 702 somehow does not apply when assertions of fact are made even though they depend upon expert knowledge. This crucial error resulted in the admission of expert testimony embedded within statements of fact by a non-expert. I focus particularly on the admission of Mr. Marshall's testimony that he told Mr. Orr in 1997 that the NIPER test results showed that Mr. Orr's fuel demonstrated no fuel economy advantages.

Setting aside Rule 702 for a moment, we must keep in mind that the rules defining hearsay dictate that Mr. Marshall's statement to Mr. Orr could *not* have been offered for the truth of the matter contained therein — *viz.* that NIPER actually concluded that Mr. Orr's fuel was ineffective. Mr. Marshall's testimony could *at most* have informed the trier of fact that Mr. Orr knew that Mr. Marshall supposedly represented that Mr. Orr's conclusions about his own fuel, which reflected fuel economy advantages, were inconsistent with the views of NIPER.

Turning back to Rule 702, the majority reasons that Marshall's testimony was "not admitted to refute Orr's claims that his fuel combination would be environmentally beneficial or his patent potentially valuable," but instead was admitted to show "whether Orr intentionally misrepresented *the results* from the NIPER testing . . . ." Maj. op. at 20.

4

But without Mr. Marshall or anyone else having been qualified as an expert, the jury could not possibly know what the results of the NIPER testing were. Given Mr. Marshall's inability as a non-expert to espouse a conclusion about the tests, the evidence reflects that Mr. Orr's representations about his fuel's effectiveness were just as likely to have been true as false. Mr. Marshall's statement to Orr only shows that Orr knew that a non-expert, such as Marshall, thought Orr's interpretation of the circumstances was wrong. For purposes of this trial, Mr. Marshall was no better able to apprise Orr of conclusions about the testing data than any NIPER employee who happened to see the data, draw some conclusion about it, and pass that conclusion on to Mr. Orr. Thus, I disagree with the majority's statement that what Mr. Marshall told Mr. Orr was relevant solely because "Orr chose Marshall . . . to assist [Orr] in testing [Orr's fuel] . . . ." Maj. op. at 20.

The majority concludes that the trial judge gave proper limiting instructions to the jury regarding Mr. Marshall's testimony. But the absence of *expert* conclusions about the actual results of NIPER's testing on Orr's fuel renders Marshall's testimony wholly irrelevant to the issues at trial. The majority dismisses this concern as going to the sufficiency of the evidence rather than its admissibility, and concludes that Mr. Orr has abandoned any sufficiency challenge. Maj. op. at 21 n.26. I respectfully disagree with this approach.

5

Mr. Marshall's testimony contained inadmissible expert conclusions, bearing no credentials of expertise and being therefore incapable of cure by limiting instructions. Moreover, the remaining testimony of Mr. Marshall was inadmissible because it was irrelevant. The irrelevance of Marshall's testimony when the expert conclusions are stripped away shows that the admission of Mr. Marshall's testimony, and that of others,[5] was not harmless error.

* * *

For the foregoing reasons, I respectfully dissent from the majority's disposition of the expert testimony issue.

---

[5] This error also makes the admission of testimony of Messrs. Reed, Ellis, and Buckmaster reversible error.